W. W. SELLEY, Appellee, v. AMERICAN LUBRICATOR COMPANY, Appellant.

119   591
f139    78

Action for Personal Services; EMPLOYMENT BY CORPORATION: EVI-
1   DENCE OF.   Where plaintiff seeks to recover for personal ser-
vices under an alleged contract with the board of directors of
defendant company, evidence of how he came to be identified
with defendant and of his employment prior to the alleged
contract, while insufficient to establish the contract, is ad-
missible as part of the history of the transaction and explan-
atory of what follows.

Same: CONTRACT OF EMPLOYMENT SHOWN BY PAROL: WHEN.   A
2   contract of employment by a corporation may be shown by
parol evidence where the minutes of the meeting of directors
fail to disclose the employment.

Remark by Court: PREJUDICIAL ERROR.   A remark by the court
3   during the progress of the trial, which assumes the truth of
the matter in dispute, is prejudicial.

Discharge of Official by Directors: RECOVERY OF SALARY: IN-
4   STRUCTION.   Where a board of directors, acting within the
scope of its power and for good cause, discharges an officer of
the corporation, no recovery for the time subsequent to the
discharge should be allowed and the jury should be so
instructed.

Review of Act of Directors in Discharging an Official.   The action
5   of a board of directors in discharging an official cannot be re-
viewed in an action by the official for his salary.

Recovery by Both Parties: VERDICT: INSTRUCTION.   Under the
6   issues and proofs in the case plaintiff might have recovered on
part of his claim, and defendant on part of its counterclaim,
and it was error not to so instruct, permitting a verdict for
the one in whose favor the larger award was found, for the
difference.

*Appeal from Polk District Court.*—HON. CHAS. A. BISHOP,
Judge.

WEDNESDAY, FEBRUARY 11, 1903.

ACTION at law to recover on a contract for personal services. Trial to a jury, verdict for plaintiff, and defendant appeals.—*Reversed.*

*Chas. L. Powell* for appellant.

*S. G. Van Auken* and *Bowen & Brockett* for appellee.

DEEMER, J.—Plaintiff claims in his petition that in May, 1898, he was elected a director of defendant corporation for the years 1898 and 1899; that by the directors he was elected vice president for one year from May, 1898 to May, 1899, at a salary of $50 per month; that his duties as such officer were not specified by the board, but that he, as such, did whatever seemed to be for the advantage of the corporation,—acting as shipping clerk, assisting in the manufacture of the products which the corporation was organized to produce, delivering the products to the depots, assisting in office work, etc.; that he continued in this office and employment until about September 1, 1898, when the defendant wrongfully discharged him; that on October 15th he was reinstated, and contiuued to work until December 31st, when he was again wrongfully discharged. He asked for $30 due him for services performed, and for $300 damages for breach of contract. Defendant admitted plaintiff's election to the offices named, but denied that his election was for a year, or for any other specified time. It also denied that he was to receive any salary for acting as vice president. It admitted that plaintiff was employed as assistant superintendent at the rate of $50 per month for services to be performed as such, but denied that the employment was for any specific length of time, and denied the alleged wrongful discharges. It also pleaded that by mutual agreement plaintiff quit work on September 1st, and was not with the defendant again until

October 15th, when it was orally agreed between the parties that plaintiff should again enter the employ of the defendant at the sum of $40 per month for an unspecified time, with the understanding that, if plaintiff did not show himself more competent to discharge the duties required of him, he should be discharged, and also be liable for whatever damages he caused defendant by reason of his unskillfulness; that on December 31, 1898, it was mutually agreed that plaintiff was incapable of filling his position, and that he should surrender it, and cease his labor for defendant; that on said day plaintiff sold all his stock, and disqualified himself from holding any office in the corporation; that his stock was purchased by the president of the association upon the express agreement and understanding that plaintiff would go out of the employ of defendant company, and sever his connection therewith.

Defendant also pleaded a counterclaim for damages suffered by it, due, as is alleged, to plaintiff's unskillfulness in the manufacture of its products, based upon the agreement for reinstatement of October 15th, and upon plaintiff's general unfitness for the work done by him, whereby a large amount of the product was lost, and rendered unfit for the market. Defendant further pleaded that the contract pleaded by plaintiff was *ultra virus* and void, for the reason that its articles of incorporation provided that any employe might be discharged at any time. It further pleaded that when plaintiff sold his stock he became ineligible to any office in the corporation, and that defendant's board of directors, upon the happening of that event, declared his positions vacant, and that plaintiff was not a member of the board of directors nor vice president after December 31, 1898. On these issues a trial was had, resulting in a verdict for plaintiff in the sum of $304.20, which was reduced by the trial court to $200, and judgment ren-

dered for the last-named sum. The case, being at law, is before us, of course, on assignments of error, and this somewhat lengthy statement of the issues is essential to a proper understanding of the points involved and presented.

I. As a part of his case, plaintiff testified as follows: "I began working for the company in March, 1897, and continued until January, 1899, except a month and a half, from September 1 to October 15, 1898. I had an oral contract with the company. Q. When was it made? A. In December, 1896. (Defendant moved the court to strike out the answer in regard to the contract in 1896, for the reason that the pleadings do not declare upon any such a contract, but declare upon the express contract entered into May, 1898. Overruled. Excepted to.) Q. You said your contract was oral, and made first in December of 1896. Now you may relate the particulars or circumstances leading up from that to the time you claim you were reemployed in May. (Same objection. Same ruling.) A. The first part of December, 1896, I met Mr. W. T. McConnell on the railroad going home from Des Moines to Bayard, and he told me about the company, and wanted to interest me in the company; and I told him I had no money to put in such a company unless I had some compensation from it; that I could not live without it. And he said, if I would come down to Des Moines, and put in $1,500, the company would give me a salary of $50 per month as long as he and his brother had anything to do with it. That they owned the principal part of the stock, and that he would see that I was one of them. (Defendant moved to strike out the above answer for the reason that the testimony is immaterial under the pleading. Overruled. Excepted to.) Q. What did you do? A. I had a sale in February, and came down to Des Moines about the 1st of March, and put in $1,500 in January, and commenced work for the company the 1st of March, 1896, and they said they were hard

*1. EMPLOYMENT by corporation: evidence of.*

up and asked if I would put in $500 more, and I did.   Q. Was there anything said to you at or about that time, to the other officers of the company, about you working on this salary that Mr. McConnell first offered you, and said you should have?   (Objected to as immaterial, and not binding on the defendant unless it be shown to be an action of the corporation.   Overruled. .Excepted to.)   A. I spoke to Mr. Kragslow, and also to Mrs. McConnell, W. I. McConnell's wife.   I was paid for my services $50 per month up to May, 1897.   Q. During that time did the directors or any officer of the company object in any way. to the agreement that these officers had made with you for the company, or object to the payment of this salary? (Objected to as immaterial for the reasons heretofore stated.   Overruled.   Excepted to.)   A. No, sir.   No one objected.''

These rulings present the first question for considera- tion.   It seems to us that this testimony, while not of itself establishing the contract upon which plaintiff relies, was admissible in evidence as a part of the history of the transaction, and explanatory of what follows.   Of course, plaintiff could not recover from the corporation on such a showing, but this evidence was admissible as tending to throw light on the subsequent transactions between the parties.

To prove his employment by defendant, plaintiff offered the records of the meetings of the board of directors and stockholders, which contained this statement as oc- curring on May 10, 1898:   "Annual meeting of the stock- holders.   *   *   *   Meeting called to order, and at once proceeded to ballot for directors.   The following named persons were immediately re-elected directors:  W. T. Mc- Connell, W. W. Selley, A. D. McConnell, Wm. Kragslow, and A. R. McConnell   *   *   .*   Board of directors called together.   *   *   *   Upon motion the secretary was in- structed to cast a vote for the re-election of the old officers.

Carried. Adjourned." It appears from the evidence that plaintiff was, therefore, duly elected as vice president, and this re-election unquestionably continued him in such office.

After this evidence was introduced, plaintiff was permitted to show that at the time this meeting was held there was considerable discussion among the members of the board regarding his salary, and that a motion was made and carried that he be retained at a salary of $50 per month, for a year. This was not recorded, and it is contended by defendant that the evidence to prove it was and is inadmissible, because not entered of record. Ordinarily, of course, the recorded minutes of the proceedings of a corporation are the best evidence of its doings; but one who enters into a contract with such a corporation, and performs labor under such contract, is not to be defeated simply because the corporation failed to make its proceedings of record. If no minutes are kept, parol evidence is admissible to show what was in fact done, and no one is to be prejudiced through failure of the recording officer to do his duty. *Zalesky v. Iowa Ins. Co.*, 102 Iowa, 512; *Athearn v. Ind. School Dist.*, 33 Iowa, 105. When some record is made, as in this case, the presumption is that it contains all the proceedings of the board; but this presumption is not conclusive, and it may be shown by evidence *aliunde* what the directors in fact did. Beach on Private Corporation, section 295; Thompson on Corporations, volume 6, section 777, and cases cited. Moreover, in view of the admissions regarding plaintiff's employment found in defendant's answer, no prejudice resulted in any event. Defendant strenuously insists that, as plaintiff alleges he was elected vice president at a salary of $50 per month, he should not have been allowed to show that he was to perform other duties for this compensation.

2. SAME: contract of employment shown by parol: when.

It is true that plaintiff made this allegation, but it also appears from some of the evidence adduced that he was to have pay for certain services to be performed by him, and it seems to us to be entirely immaterial in this connection whether in so doing them he was acting under the cognomen of vice president or as a man of all work. The material inquiry under the allegations of the petition is, was plaintiff employed to do work for a specified time at an agreed compensation?   Defendant admits plaintiff's employment in some capacity, but says there was no specified time of service, and pleads other matters to which we have already called attention.   So that, in no event, was there any prejudice in the admission of the evidence as to what was done by defendant board of directors, not shown by the minutes of that body.   There is a practical concession that there was no record made of plaintiff's employment, for defendant offers no record thereof, except that already considered, although it admits that plaintiff was employed in some capacity.   The by-laws of the defendant company provide that the board may fix the compensation for services rendered the corporation by its officers and employes.   Under this authority, in view of defendant's admissions, we think the evidence was competent, even if it be said that plaintiff was vice president.

II.   During the course of the trial plaintiff testified that when he came back after being discharged he went on working right along until January; that Mr. Manning kept the books, and secured orders, and went

3. REMARK
by court: prejudicial error.

out and marked the goods.   Defendant moved to strike out all the evidence regarding what Manning did, and the court remarked: "If he was there, and willing and ready to perform his services, what difference does it make what Manning says?   He had a contract to cover that period of time, and was there ready to work. That is the end of it."   This statement as to plaintiff's having a contract assumed the truth of the very matter in

issue, and, had it been embodied in an instruction to the jury, would manifestly have been erroneous and prejudicial.  That it was a remark made during the course of the trial in response to an objection made to evidence in no manner tends to show that it was without prejudice. Authorities are abundant that such remarks are erroneous. We do not cite them, as they are familiar to the profession.    It may be that some qualification was made of the remark, but, if so, it is not disclosed by the record.

III.   Defendant asked an instruction as follows: "You are instructed that under the articles of incorporation and by-laws of defendant corporation the board of

4. DISCHARGE of official by directors: recovery of salary; instruction.

directors of defendant had a right to remove the plaintiff from his office of vice president and member of the board of directors for good cause, and you are instructed that, if they did remove him after the 1st of January, 1899, when it came to their attention that the plaintiff had disposed of his stock, then, and in that case, plaintiff would not be entitled to recover anything in this action for the period of time after the 1st of January, 1899."   In view of one of the issues tendered by defendant's answer; the nature of the arrangement as testified to by plaintiff; the evidence as to plaintiff's sale of his stock, and to his conduct after the sale, when he presented his account to the defendant; the provision of the by-laws of the corporation to the effect that "The board of directors may for good cause discharge or suspend any of the officers or employes of the corporation;" "the board of directors shall have the power at any time to remove one or more of their number for cause, by a two-thirds vote, and fill the vacancy thereby caused, until the next annual meeting, of the stockholders"; the further provisions that the vice president should be a member of the board; the record of the proceedings of the board of directors, showing that a vacancy was declared in the office of vice president and on the

board of directors by reason of plaintiff's having sold his stock, —it seems to us this instruction should have been given. The board had power, as will be observed, to discharge for cause any officer or employe of the corporation. Plaintiff was a member of that corporation, and an officer therein, and had been for some time prior to his election as vice president. He must, therefore, be presumed to have had knowledge of the articles of incorporation and by-laws. He claims to recover by reason of having been elected vice president, and says that he entered into the employ of the company with the understanding that he should have $50 per month so long as he remained with or held stock in the company. His claim to compensatoin is bottomed on the thought that he was elected vice president of the company for the full period of one year, and that the services he performed, while not fixed by the by-laws, were required of him by the company as an incident to his office.

Under this state of facts, we think the instruction asked, or one like it, should have been given. If plaintiff was elected vice president of the company for a year, his election was, of course, subject to and governed by the by-laws, of which he is conclusively presumed, by reason of his connection with the company, to have had knowledge when he was elected to the office. It is admitted that he sold all of his stock in the company, and it is also shown that he was deposed for that reason as a director and vice president of the company at a meeting held by the board of directors on January 11, 1899. This was done because he had sold all of his stock. That, it seems to us, was good cause for deposing plaintiff. At any rate, the board so treated it, and, having the power of discharge, its proceedings are not subject to review in this form of action.

5: REVIEW of act of directors in discharging an official.   See, as sustaining our conclusions on this branch of the case, Beach on Corporations, section 223, and cases cited; *Stobo v. Davis*

54 Ill. App. 440; *Oglesby v. Attrill*, 105 U. S. 605 (26 L. Ed. 1186); Wood, Master and Servant, p. 274; *Hunter v. Ins. Co*, 26 La. Ann. 13; *Douglass v. Ins. Co.*, 118 N. Y. 484 (23 N. E. Rep. 806, 7 L. R. A. 822).

IV.  Defendant asked an instruction to the effect that plaintiff could not recover without showing that a resolution was passed by its board of directors prior to the rendition of the services, because the articles of incorporation and by-laws did not provide for compensation to any of the officers of the corporation.  Conceding this to be the rule, which, under the peculiar allegations of plaintiff's petition, we think must be true (*Bank v. Elliott*, 55 Iowa, 104; *Brown v. Ice Co.*, 113 Iowa, 615; *Carrothers v. Springs Co.*, 61 Iowa, 681), still we find that the trial court instructed in accord with defendant's contention on this branch of the case, and told the jury, in effect, that plaintiff could not recover without showing his employment by defendant at a fixed salary for a definite time.

V.  The trial court charged the jury, in its seventh instruction, as follows:  "If you have found that the plaintiff is entitled to recover on his cause of action as **6. RECOVERY** stated by him, and having ascertained the **by both parties: ver-** amount that he is entitled to recover, then **dict: instruc-** **tion.** you will return your verdict for the plaintiff for the amount you so find him entitled to.  If you have found plaintiff not entitled to recover upon his cause of action, but that defendant is entitled to recover upon its counterclaim, then you will return your verdict in favor of defendant for the amount you so find in his favor.  If you find neither party entitled to recover, then you may return a verdict generally for the defendant."  The defendant's counterclaim was submitted on the theory that there could be no recovery thereon against plaintiff unless it (defendant) established the alleged agreement of October 15th, pleaded by it in the counterclaim, and it further appeared that there was no prior agreement for service for

a fixed period of time.   It is insisted that the jury should not have been told, as in these instructions that, if plaintiff established the contract as alleged by him, there could be no recovery on defendant's counterclaim, and that defendant could not recover on its counterclaim if plaintiff had a right of action on his original contract.   The exact contention here is that under the issues and the proofs plaintiff might have recovered for part of his claim and defendant for part of his counterclaim, and that an instruction should have been given permitting a recovery by each on his cause of action, and directing a verdict returned for the one in whose favor the larger amount was found for the difference between the two awards.   This contention is sound. Plaintiff may have had a right to recover on his cause of action for loss of employment from September 1 to October 15, 1898, and still have been liable for damages, on the counterclaim occurring after October 15th, under the alleged agreement with relation to services thereafter. Under the instruction as given, however, the jury was obliged, in the event it found for plaintiff at all, to disallow defendant's counterclaim *in toto*.   That this was prejudicial to the defendant is manifest, we think, from what has already been said.

Some other rulings are complained of, but, as the questions presented are not likely to arise on a retrial, we do not consider them.

For the errors pointed out, the judgment must be REVERSED.

MARGARET CONNELL *et al.*, Appellees, v. JOHN CONNELL, Appellant.

**Admissibility of Transcript of Evidence.** IMPEACHMENT. A trans-
1   cript of the evidence of a witness on a former trial is inadmissible for the purpose of impeachment on a subsequent trial, where the same is not certified to contain ''the whole of the shorthand notes of the evidence of such witness'' as required by chapter 9, Acts 27th General Assembly.

**Same:** PREJUDICIAL ERROR. Where a transcript of the evidence
2   of a witness on a former trial is erroneously admitted to impeach such witness and is contradictory to evidence given on the same subject on the trial in progress, the error is prejudicial.

**New Trial.** Newly discovered evidence which is merely cumula-
3   tive will not support a motion for a new trial, nor will a new trial be granted after the term at which the action was tried, under Code section 4092, where the grounds of the petition were known before the trial.

*Appeal from Sioux District Court.*—HON. J. F. OLIVER AND HON. GEO. W. WAKEFIELD, Judges.

WEDNESDAY, FEBRUARY 11, 1903.

THE main action is one for the conversion of personal property. There was a verdict and judgment therein for the plaintiff, from which the defendant appealed on the 23d day of May, 1900. After the judgment was rendered against him, the defendant filed a petition for a new trial, the facts of which were tried and determined adversely to him in June, 1900, and from that judgment he also appeals. —*Reversed.*

*G. Klay* and *John Connell* for appellant.

*G. A. Gibson* for appellees.

SHERWIN, J.—The only question for determination in
the main case is whether a portion of a transcript of the

1. ADMISSIBIL-
ITY of trans-
cript of evi-
dence: im-
peachment.
testimony of the defendant in another case
was properly admitted in evidence for im-
peaching purposes. The certification of the
transcript failed to show "that the whole of the shorthand
notes of the evidence" of the defendant was contained in.
the transcript, as provided by, chapter 9 of the Acts of the
27th General Assembly, and the record, fairly construed,.
shows conclusively that timely objection was made to the
offer of such transcript, and that it was based upon the
ground herein indicated. That the transcript offered was.
incompetent clearly appears from the language of the
statute, because, while it provides for the use of a duly
certified transcript of the evidence in a retrial of the case
or proceeding in which the same was taken, "and for pur-
poses of impeachment in any case," it also specifically
denies its use "unless it shall appear from the certificate
of verification thereof" that it contains "the whole of the
shorthand notes of the evidence of such witness." See,.
also, *Boyd v. First National Bank,* 25 Iowa, 255.